UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JEROME W. JOHNSON**, <br><br> Plaintiff, <br><br> v. <br><br> **CARLOS DEL TORO**, <br><br> Defendant. | Case No. 23-cv-1362 (CRC) |

**MEMORANDUM OPINION**

Plaintiff Jerome Johnson was removed from his position as a Postal Supervisor at the Naval District Washington Installation after he reportedly made threatening comments on a call to the Veterans Administration Crisis Hotline. After unsuccessfully challenging his removal before the Merit Systems Protection Board ("MSPB"), Johnson filed suit against Defendant Carlos Del Toro in his official capacity as United States Secretary of the Navy ("the Navy"). Johnson's complaint—which is thin on factual allegations and fuzzy on its grounds for relief—appears to advance claims of retaliation under both Title VII of the Civil Rights Act of 1964 ("Title VII") and the Whistleblower Protection Act of 1989 ("WPA"). Johnson also challenges his removal under the Administrative Procedure Act ("APA"), the Federal Tort Claims Act ("FTCA"), and the Fifth Amendment's Due Process Clause. The Navy has moved to dismiss the complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Finding Johnson did not respond to most of the Navy's arguments for dismissal in his opposition and failed to state a viable claim regardless, the Court will grant the Navy's motion.

I.  **Background**

The Court draws the following background from Johnson's complaint. Where necessary to fill in the gaps of his sparse allegations, the Court refers to documents referenced in Johnson's

complaint as well as his opposition, such as it is.  See Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.").

Johnson, a retired Army veteran, worked as a Postal Supervisor at the Naval District Washington Installation.  Compl. ¶ 1.  At some unspecified time, Johnson claims he was transferred from his post in Indian Head, Maryland, to the Navy Yard in Washington, D.C., after he reported coworkers "living outside the District of Columbia" who were "improperly using the District of Columbia Public School . . . lottery system to send their children to coveted District of Columbia schools."  Id. ¶ 14; see Opp'n ¶ 1.  This transfer purportedly added about 40 minutes to Johnson's daily commute.  Opp'n ¶ 1.[1]

On April 2, 2015, Johnson called the Veterans Administration Crisis Hotline.  Compl. ¶ 15.  On that call, Johnson admits he referred to the deadly 2013 Washington Navy Yard shooting where a Navy contractor fatally shot 12 people.  Id. ¶ 16.  According to Johnson, he was distressed and pleaded with the Crisis Hotline worker "not to fail him like they [had] failed the Navy Yard shoot[er]."  Id.  In the Crisis Hotline worker's telling, by contrast, Johnson threatened to "kill several people and then commit suicide" thereafter.  Id. ¶ 17.  He responded by contacting Johnson's supervisor, and, after an investigation, Johnson was placed on paid administrative leave and barred from entering naval facilities.  Id. ¶¶ 18–21.  After his leave

---

[1] There is some confusion over the timeline of the allegedly retaliatory transfer. Johnson's opposition suggests he is complaining about a past transfer from Indian Head to the Navy Yard.  See Opp'n ¶ 1.  The Merit Systems Protection Board decisions below, however, indicate Johnson was aggrieved about the prospect of being transferred from his then-current post in Indian Head back to the Navy Yard, where he previously had worked.  See Mot. Dismiss, Ex. B at 9.

2

period lapsed, Johnson was charged with absence without leave—or, in military parlance, being "AWOL." Id. ¶¶ 24–25.  That September, Johnson was officially removed from federal service. Id. ¶ 26.

Johnson appealed his removal to the MSPB.  Id. ¶ 27.  In his appeal, Johnson contested the Crisis Hotline worker's account of the phone call and claimed he had improperly disclosed the details of their confidential conversation.  See id. ¶¶ 30–31; Mot. Dismiss, Ex. B ("MSPB Initial Decision") at 1–13.  Johnson also raised affirmative defenses, arguing that his removal was unlawful retaliation for whistleblowing and utilizing the Navy's Equal Employment Opportunity ("EEO") procedures.  See Compl. ¶ 29; MSPB Initial Decision at 16–19.  After a full evidentiary hearing, in October 2016, an MSPB Administrative Judge issued an Initial Decision affirming the Navy's removal order.  See Compl. ¶ 31; MSPB Initial Decision. Johnson then filed a petition of review, and, in April 2023, a three-member MSPB panel affirmed the Initial Decision in a 14-page opinion.  See Compl. ¶ 31; Mot. Dismiss, Ex. C ("MSPB Final Decision").

One month later, Johnson filed this action against the Secretary of the Navy in his official capacity.  Though his complaint does not clearly identify the grounds for relief, Johnson appears to assert retaliation claims under Title VII and the WPA and to broadly challenge his removal from federal service under the APA, the FTCA, and the Fifth Amendment's Due Process Clause. The Navy has moved to dismiss Johnson's complaint in full under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence.  See Lujan v. Defs. of Wildlife, 504 U.S. 555,

561 (1992).  A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged."  Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation marks omitted).  The Court also may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction.  See Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

      Rule 12(b)(6) requires the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  In analyzing a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court must "accept as true all of the complaint's factual allegations and draw all reasonable inferences in favor of the plaintiffs" but need not "accept inferences unsupported by facts or legal conclusions cast in the form of factual allegations."  Owens v. BNP Paribas, S.A., 897 F.3d 266, 272 (D.C. Cir. 2018).  In addition to the allegations within the four corners of the complaint, the Court may consider "documents attached thereto or incorporated therein, and matters of which it may take judicial notice."  Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006).

   **III.  Analysis**

      In its motion to dismiss, the Navy raised a full suite of reasons for dismissing each of Johnson's claims.  Johnson did not even hazard a response to most of the Navy's arguments in his cursory opposition.  "It is well understood in this Circuit," however, "that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."

Hedgeye Risk Mgmt., LLC v. Heldman, 271 F. Supp. 3d 181, 190 (D.D.C. 2017) (citation omitted). The Court will do so here. For sake of completeness, though, the Court will delve into each count and explain why, even if Johnson had contested the Navy's motion, none states a plausible claim for relief.

    A. Title VII

First, on the Title VII claim, Johnson fails to state a viable claim of retaliation because he did not plausibly allege that he was removed from federal service because of his participation in a protected activity. Rather, it appears abundantly clear that Johnson was terminated because of legitimate concerns over reports of his threatening phone call to the Crisis Hotline.

To state a viable retaliation claim, a plaintiff must "allege that [he] engaged in activity protected by Title VII, the employer took adverse action against [him], and the employer took that action because of the employee's protected conduct." Walker v. Johnson, 798 F.3d 1085, 1091–92 (D.C. Cir. 2015). Johnson's retaliation claim fizzles at the outset because he provides no account of what protected activities he performed. Instead, his lone allegation on this score is the cursory declaration that "[t]his action arises under Title VII of the Civil Rights Act, 42 USC § 2000e, which prevents discrimination based upon retaliation." Compl. ¶ 7. That plainly does not cut it for pleading purposes. See Iqbal, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (quotation marks omitted)).

Thumbing through the pages of the MSPB decisions shines some additional light on this murky allegation. In the MSPB proceedings, Johnson argued as an affirmative defense that his termination was wrongful retaliation for filing an EEO complaint in August 2014. See MSPB Initial Decision at 18–19. Although Johnson "failed to submit a copy of the complaint, identify

5

the accused management official(s) if any, or otherwise provide any basis for finding reprisal," it appears from the Administrative Judge's decision that Johnson may have lodged his complaint against his direct supervisor, John Gvozd, and possibly Postal Director Ernest Terry. Id. at 9, 19. Yet even if Johnson did engage in protected activity by filing an EEO complaint, that alone does not give rise to a reasonable inference that his removal was retaliatory. The nature of his EEO complaint still remains a total mystery, and Johnson never alleged that the officers responsible for his removal were even aware of it. See id. at 19. His only route to establishing retaliation is therefore under a "cat's paw" theory of liability under which employers can be held responsible when "a formal decision maker [is] an unwitting conduit of another actor's [discriminatory or retaliatory] motives." Walker, 798 F.3d at 1095. These allegations do not support a cat's paw claim, however, as Johnson's own complaint makes clear that the driving force behind his removal was the Crisis Hotline worker's account of his purported threats. It's true that the proposing and deciding officers responsible for Johnson's removal also considered reports from his supervisors saying they took his threats seriously and feared for their safety. See MSPB Initial Decision at 3–6. But Johnson offers no reason to doubt the sincerity of these reports or speculate that his supervisors' safety concerns were feigned as part of a ruse to exact revenge for his filing of a nondescript EEO charge a year earlier. Rather, by all accounts, the supervisors' anxieties appear to be reasonable responses to disturbing reports of Johnson's threats. Moreover, to state a claim of Title VII retaliation, a plaintiff must show that his protected activity was the but-for cause of an adverse employment action. See Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013). Johnson offers no basis for believing any retaliatory motive that his supervisors may have harbored against him contributed to, much less made the difference in, his removal.

Accordingly, even looking past Johnson's pleading failures and apparent concessions, the Court still cannot cobble together a viable Title VII retaliation claim based on the allegations and submissions presented here.

B.  Whistleblower Protection Act

Johnson next asserts a retaliation claim under another federal statute: the WPA.  Again, his allegations have little meat on the bone.  Johnson appears to allege that, at some unidentified time, he was retaliated against after reporting coworkers who resided outside of the District of Columbia but used phony addresses in the District for the school lottery system.  See Compl. ¶¶ 7, 14.  Though his complaint is once more devoid of detail, Johnson clarifies in his opposition that he is claiming his transfer from Indian Head, Maryland to the Navy Yard was reprisal for calling out this fraudulent activity.  See Opp'n ¶ 1.  But this clarification is no cure-all.

For starters, the Navy's primary basis for dismissing this WPA claim was that the Court lacks jurisdiction over it because Johnson did not exhaust his administrative remedies.  See Mot. Dismiss at 15–17.  Johnson, for whatever reason, entirely failed to address exhaustion in his opposition, thereby conceding the matter.  See Wannall v. Honeywell, Inc., 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

If the Court were to forgive this concession, it is doubtful Johnson properly exhausted his administrative remedies—although perhaps not for the exact reasons the Navy identifies.  The Navy begins from the opening premise that the WPA generally requires federal employees to present their complaints to the Office of Special Counsel before proceeding before the MSPB.  See Mot. Dismiss at 16 (citing Spruill v. Merit Sys. Prot. Bd., 978 F.2d 679, 682 (Fed. Cir. 1992)).  Because Johnson did not allege that he filed a complaint with the Office of Special

7

Counsel, the Navy reasons, he has not shown that he exhausted administrative remedies. Id. That's true, if the Court were to limit its review to the four corners of Johnson's complaint. A more fulsome review of the pleadings tells a slightly different story, however. As noted above, the MSPB decisions that the Navy appended to its motion show Johnson raised Title VII and WPA retaliation claims as affirmative defenses to his termination. See MSPB Initial Decision at 16–19. As the D.C. Circuit and other courts have held, a party can properly exhaust administrative remedies by raising a WPA claim before the MSPB as an affirmative defense to his removal from federal office. See Marcato v. U.S. Agency for Int'l Dev., 11 F.4th 781, 786 (D.C. Cir. 2021) (citing Baca v. Dep't of the Army, 983 F.3d 1131, 1137 (10th Cir. 2020)); accord Parkinson v. Dep't of Just., 874 F.3d 710, 713 (Fed. Cir. 2017) (holding federal employees "may raise a whistleblower reprisal allegation in one of three ways: (i) to the OSC under 5 U.S.C. § 1214, (ii) at the Board by filing an [Individual Right of Action] under 5 U.S.C. § 1221, or (iii) as an affirmative defense to an adverse employment action under 5 U.S.C. § 7701(c)(2)(B)"). And, because this is a "mixed case" where Johnson raised a WPA claim alongside a Title VII claim, it was proper for Johnson to then challenge the MSPB's final decision on his affirmative defenses in this court. See Abou-Hussein v. Mabus, 953 F. Supp. 2d 251, 260 (D.D.C. 2013) (describing how "mixed cases" should be brought in the district court). So far, so good.

But that reasoning would apply only to the WPA claim that Johnson actually presented to the MSPB, and there seems to be a mismatch here. Before the MSPB, Johnson alleged that his removal from office was unlawful retaliation under the WPA. See MSPB Initial Decision at 16–18. Now, before this Court, Johnson claims his transfer from Indian Head to the Navy Yard was reprisal for blowing the whistle on his coworkers. See Opp'n ¶ 1. Challenging a removal order

is not the same as contesting a transfer. Johnson therefore appears to be advancing a new WPA claim here—one he did not present to the MSPB and is, accordingly, unexhausted.

Finally, even if Johnson could clear the dual hurdles of concession and exhaustion, his WPA claim would still stumble on the merits. His complaint and his submissions before the MSPB provide almost no information about the nature of his supposed whistleblower complaint, when it occurred, or who knew about it. All he alleges is that, at some point, he reported certain coworkers for residency fraud, and, for some reason, his supervisors retaliated by transferring him at some unknown time. See Compl. ¶ 14; Opp'n ¶ 1; MSP Initial Decision at 10, 16. Such vague and cursory allegations are insufficient to plausibly state a claim of WPA retaliation.

### C. APA, FTCA, and Fifth Amendment Claims

Johnson lastly challenges the proceedings leading to his removal from federal service under the APA, the FTCA, and the Fifth Amendment's Due Process Clause. While his skeletal complaint again makes it hard to discern the exact bases for these challenges, they appear to be premised on the MSPB's decision to admit and credit the testimony of the Crisis Hotline worker who, from Johnson's vantage, breached confidentiality and misrepresented their conversation. See Compl. ¶¶ 33–40; Opp'n ¶¶ 4–10. But all three claims have the same fundamental defect: As challenges to Johnson's removal from federal employment, they are preempted by more on-point statutes—namely, Title VII and the Civil Service Reform Act of 1978 ("CSRA").

In Brown v. General Services Administration, the Supreme Court held that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." 425 U.S. 820, 835 (1976). "This includes both constitutional claims and common law tort claims arising out of the same conduct that forms the basis for a plaintiff's Title VII claim." King v. Holder, 941 F. Supp. 2d 83, 92 (D.D.C. 2013). Outside the domain of discrimination, the

"CSRA governs the relationship between the federal government and its employees, providing a comprehensive system for reviewing personnel action taken against federal employees. As a result, the CSRA generally precludes district courts from taking jurisdiction over CSRA-related claims" flying under different flags. Sculimbrene v. Reno, 158 F. Supp. 2d 1, 5 (D.D.C. 2001) (cleaned up). Accordingly, courts repeatedly have held that the CSRA precludes terminated federal employees from raising the set of claims that Johnson advances here. For the APA, the D.C. Circuit has held that "[f]ederal employees may not circumvent the [CSRA's] requirements and limitations by resorting to the catchall APA to challenge agency employment actions." Grosdidier v. Chairman, Broad. Bd. of Governors, 560 F.3d 495, 497 (D.C. Cir. 2009). So too for the FTCA, where the D.C. Circuit has recognized that a "residual statute like the FTCA . . . cannot co-exist with a comprehensive employment relations scheme" like the CSRA. Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 940 F.2d 704, 708 (D.C. Cir. 1991). "Had Congress intended for such decisions to be reviewable in district courts in the context of actions under the Federal Tort Claims Act," the court reasoned, "it would not have so precisely defined the civil service remedy." Id. (citation omitted). Applying a similar logic, courts in this District have held that "the comprehensive nature [of] the CSRA's remedial scheme preempts [a] Bivens claim" under the Due Process Clause. Earle v. Clayton, No. 19-cv-1419 (CKK), 2020 WL 95812, at *6 (D.D.C. Jan. 8, 2020); accord Koch v. White, 967 F. Supp. 2d 326, 335–36 (D.D.C. 2013) (holding Title VII and the CSRA preempt a Bivens due-process claim).

The Court therefore finds that Johnson is precluded from raising these three challenges. To the extent Johnson sought to charge the Navy with discrimination and/or retaliation, this challenge merges with his Title VII claim. And to the extent he is contesting the fairness of the

procedures employed in his removal from federal service, that challenge must be brought under the CSRA.[2]

### IV. Conclusion

For the foregoing reasons, the Navy's motion to dismiss is granted. A separate Order will follow.

                                               CHRISTOPHER R. COOPER
                                               United States District Judge

Date: April 30, 2024

---

[2] Because the Court finds that these claims are preempted, it need not delve into their various other deficiencies. Yet the Court notes that, in alleging a due-process violation, Johnson did not identify any "process that was due but denied" during his evidentiary hearing or appeal to the full MSPB. Kelley v. District of Columbia, 893 F. Supp. 2d 115, 123 (D.D.C. 2012). And on his FTCA claim, Johnson failed to name the United States as a defendant, even though courts in this District regularly have held that the United States (rather than an officer in his or her official capacity) is the only proper defendant in such an action. See, e.g., Tolson v. Stanton, 844 F. Supp. 2d 53, 57 (D.D.C. 2012); Allen v. Brown, 185 F. Supp. 3d 1, 10 (D.D.C. 2016).